IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 1, 2011

## STATE OF TENNESSEE v. MARQUETTE WOODS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-01899     Paula Skahan, Judge**

**No. W2011-00819-CCA-R3-CD  - Filed February 10, 2012**

The defendant, Marquette Woods, was convicted by a Shelby County Criminal Court jury
of aggravated robbery, a Class B felony, and was sentenced to nine years in the Department
of Correction.  On appeal, he challenges the sufficiency of the convicting evidence.  After
review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and
JERRY L. SMITH, J., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal) and Alicia J. Kutch
and Jennifer E. Johnson (at trial), Assistant Public Defenders, for the appellant, Marquette
Woods.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney
General; Amy P. Weirich, District Attorney General; and Corliss Shaw, Assistant District
Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was indicted on charges of aggravated robbery and aggravated assault[1]
after the victim, Rayford Richardson, identified the defendant as the man who took $913
from him at gunpoint.

---

[1] The aggravated assault charge was dismissed.

## State's Proof

At trial, the sixty-seven-year-old victim testified that he was robbed on July 22, 2009. The victim recalled that, on that date, he went to the bank and withdrew $1013 and then drove to his house, arriving around 1:30 or 2:30 p.m. After he pulled into the driveway and was getting out of his car, he heard someone running up behind him. He recalled that "the person said give me the money. And I said what money. And then he said give me the money." The robber was armed with what appeared to be a black .38 caliber revolver, which he pointed at the victim and threatened to shoot. The victim got a good look at the robber and identified the defendant as the robber in court.

The victim testified that his wife came to the door, exclaimed that the victim was being robbed, and the defendant commanded her to go back inside. The victim's son then came to the door and entreated the victim to hand over the money. The victim stood up, and the defendant reached into the victim's pocket, grabbed $913, got into a car, and left. The defendant drove to the end of the street, "which is a dead end[,] and turned around and came back out." As the defendant drove by the victim's house, he pointed the gun at the victim. The victim's wife and son were standing in the driveway with him at that time, and the victim's son was able to get the tag number from the car.

The victim testified that he called the police and that they came to the scene and took a statement from him. The day after the robbery, he spoke with Sergeant White in the robbery division. Sergeant White showed him an array of suspects from which he identified the defendant as the robber. Sergeant White then informed him that the tag number from the car involved in the robbery traced back to the suspect he had identified. In court, the victim reiterated that he was sure the defendant was the person who robbed him.

## Defendant's Proof

Ashley Smith, the defendant's girlfriend, testified that, in July 2009, she lived with a roommate, Sierra Knight, at the Eden Point Apartments, and the defendant spent the night with her frequently. Neither Smith nor the defendant were employed at the time, but Knight had a job. Smith could not recall July 22, 2009, specifically, but she recalled her routine for that month. She said that she would wake up around noon, and Knight would get ready for work. Around 1:45 p.m. she would drive Knight to work and then return home. She said that the defendant spent the night with her the night before the victim was robbed, and he accompanied her to take Knight to work the day of the robbery. Approximately thirty minutes after they got home from taking Knight to work, the defendant's friend, Terrance Robinson, arrived at her apartment in the defendant's car to pick up the defendant. She explained that Robinson had the defendant's car because the defendant did not like to park

it at Smith's apartment due to crime concerns.

Smith testified that she assumed that Robinson dropped the defendant off at an automobile paint shop because the defendant called her an hour later asking her to pick him up from such location. Smith explained that the defendant's car was being repainted because he had been in a recent accident. She said that the defendant's insurance was paying for the repairs. The defendant had a check with him from the insurance company with which to pay for the repairs, and she agreed that the defendant might have needed to go to the bank to cash the check in order to do so. After Smith picked up the defendant from the paint shop, they returned to her apartment. They remained at Smith's apartment for two to three hours until the defendant left again around dinner time. She did not see who picked up the defendant, but he returned again later that night being dropped off by Robinson.

Smith acknowledged that her testimony concerned her daily routine and that it was not part of the defendant's daily routine to take his car to the paint shop. She admitted that she was not certain that the events concerning the defendant's taking his car to the paint shop and her picking him up happened on the day that the robbery occurred. Smith stated that she had no knowledge of the robbery of the victim and did not find out about it until the defendant turned himself in. The defendant did not give her any details, but he told her that an investigator was going to call her and that she was his alibi. She thought this occurred at the end of July or the beginning of August. She said the police never contacted her. She came forward the day before trial to say that the defendant was with her at the time of the robbery.

Smith testified that she had known the defendant since 2004 and considered them to be engaged. Even so, she would not lie for him if he committed a crime. She said that the defendant had had a slight goatee and mustache since she had known him. She identified the defendant in the photographic array that had been shown to the victim. She noted that Robinson was also pictured in the array – in the top right corner. She said that Robinson had a smaller mustache than the defendant and did not have a goatee.

The defendant testified that he did not rob the victim. He recalled the sequence of events of the day of the robbery consistently to that testified by Smith. He said that he had known Terrance Robinson since elementary school. He claimed that after Robinson picked him up at Smith's apartment, he dropped Robinson off at his house and then went to his grandmother's house to pick up his insurance check. He said that the insurance check was in the amount of $2700 for a hit and run claim he had filed. After leaving his grandmother's house, the defendant went to the paint shop, left his car, and had Smith come pick him up. They returned to Smith's apartment where he stayed for three to three and a half hours.

The defendant testified that, after that time period, "[his] partner Noel Jackson" came and picked him up from Smith's. The defendant claimed that Jackson called and told him that a robbery had been committed by someone driving the defendant's car. The defendant called Terrance Robinson to confront him about the robbery, but Robinson "said nothing." The defendant claimed that Robinson committed the robbery.

The defendant acknowledged that he drove a 2004 Infiniti I35, which used to be gold but had been repainted white. He said that a title loan company had taken the car. The defendant testified that he was not working or going to school at the time of the robbery. He resided with his grandmother at the time of the robbery because his mother had passed away. He received $30,536 in life insurance proceeds due to his mother's passing and, therefore, had no need of $900 from the victim. He denied turning himself into the police.

The defendant testified that when the police arrested him, he did not tell them that Terrance Robinson committed the robbery because Robinson had threatened to kill him if he told the police anything. He also did not tell the police that he had been with Smith at the time of the robbery. He said that he told the police that his car was at the paint shop, but "the paint worker showed them [his] car was at the shop after [the robbery] happened." The defendant stated that Robinson, who was now deceased, had threatened him with a black nine-millimeter gun. He did not tell the police that Robinson had committed the robbery even after Robinson died because he thought Robinson's brothers might threaten him if he accused Robinson after Robinson's death. The defendant stated that he did not tell his attorney about Smith or Robinson earlier because he did not take the charges seriously at first because he knew he was innocent.

**Rebuttal Proof**

Lieutenant Frank Winston with the Memphis Police Department testified that he was assigned to the robbery bureau in August 2009 when he received a call from a "CAT Unit" that they were executing a search warrant of the residence of Nolan Jackson, the victim's next-door neighbor, and came across a piece of paper with the defendant's name on it. The CAT Unit ran the defendant's name and discovered that there was a warrant out on him for aggravated robbery. Lieutenant Winston told them to bring the defendant in, which they did.

Lieutenant Winston testified that he started to interview the defendant and that the defendant told him he would tell him what happened but would not sign anything. The defendant recounted to Lieutenant Winston that "he followed the victim . . . to a bank. And . . . once the guy left the bank he followed him back to his house and he got out of the car with a gun and robbed the guy in his driveway. He got nine hundred and thirteen dollars from him." Lieutenant Winston said that the defendant never denied committing the robbery

-4-

or said that someone else was to blame. The defendant also never said that someone forced him to confess.

After the conclusion of the proof, the jury convicted the defendant of aggravated robbery as charged in the indictment.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence, arguing he was not the person who robbed the victim. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear when "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1).

In the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find the defendant guilty of aggravated robbery. The victim identified the defendant as the person who pointed a gun at him, threatened to shoot him if he did not hand over his money, and took $913 from his pocket. A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. See State v. Hill, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Lieutenant Winston testified that the defendant confessed to him that he robbed the victim and recounted the events consistently with the victim's recollection of events. The defendant argues that he did not "need" to rob the victim because he already had a significant amount of money in his possession and also provided an alibi from his girlfriend. However, it was within the province of the jury to discredit the defendant's self-serving alibi that materialized the night before trial, as was it also within the province of the jury to determine that the defendant committed the robbery even if he did not "need" the money. The defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE